UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                                 Case No. 17-cr-62-pp

CHAVIS C. JOHNSON,

    Defendant.

**ORDER GRANTING GOVERNMENT'S MOTION FOR REVIEW OF PRETRIAL RELEASE OF DEFENDANT (DKT. NO. 24), VACATING ORDER SETTING CONDITIONS OF RELEASE (DKT. NO. 21) AND ORDERING DEFENDANT DETAINED PENDING PLEA AND SENTENCING**

On June 30, 2017, officers arrested the defendant for being a felon in possession of a firearm. Dkt. No. 20 at 3; Dkt. No. 1. The officers were responding to a report of shots being fired in the 4100 block of North 19th Street, when they found the defendant and another person sitting in a car in front of 4129 North 20th Street; it was around 11:30 at night. Dkt. No. 20 at 3. The officers stopped to ask the two if they'd heard the shots, and shone the squad car's spotlight into the car (the defendant was in the passenger seat). Id. The defendant looked at the officers, then turned away and got out of the car on the passenger side. Id. He began to move away from the officers—the parties disagree about whether he walked away, walked *briskly* away or ran, but they agree that he was moving away from the officers. One of the officers observed the defendant holding his right side "with his right arm near his pants pocket, in a manner consistent with the carrying of an unholstered firearm." Id. The

1

other officer says that he saw a gun as the defendant walked away (briskly or otherwise). The second officer told the defendant to stop, but the defendant continued to move away toward the house at 4129 North 20th Street. The officers apparently caught up with the defendant, and detained him on the porch of that house. Id. He had a loaded Smith and Wesson, model SW40VE, .40-caliber pistol in his right front pants pocket; the serial number on the gun had been obliterated. Id.

Two days later, the Milwaukee County District Attorney's Office filed a complaint, charging the defendant with being a felon in possession of a firearm, resisting an officer and possessing a firearm while under a harassment injunction. State v. Johnson, 2017CF003013 (Milwaukee County Circuit Court), available at https://wcca.wicourts.gov. At the initial appearance, the commissioner ordered the defendant released to the supervision of Justice Point on a $2,500 cash bond, with the conditions that he maintain absolute sobriety, participate in drug testing and not possess firearms; the commissioner also required him to appear at all future court dates. Id. The defendant posted bond five days later. Id.

The defendant showed up for the next three hearings: the preliminary hearing on July 11, 2017; a July 14, 2017 hearing regarding a violation of bond (during which the commissioner admonished the defendant, but didn't revoke his supervision); and a scheduling conference on August 1, 2017 (at which the judge set a final pretrial conference for September 21, 2017 and a jury trial for October 11, 2017). Id. On August 31, 2017, however—two months

after the defendant's arrest and release—Justice Point filed a "discharge summary," which caused the judge to schedule a bond hearing for September 8, 2017. Id. The defendant did not show up for that hearing, and the court issued a warrant. Id.

A month later, a federal grand jury indicted the defendant on a single count of being a felon in possession, based on the events that took place on the night of June 30, 2017. Dkt. No. 1.

A year and a half passed from the date the defendant last had appeared in state court. On April 22, 2019, the defendant was picked up on the state bench warrant. State v. Johnson, 2017CF003013 (Milwaukee County Circuit Court), available at https://wcca.wicourts.gov. The circuit court judge set bail at $4,000. Id. This court, through Magistrate Judge Nancy Joseph, scheduled an initial appearance/arraignment and plea hearing for May 17, 2019, and issued a writ of *habeas corpus* to bring the defendant from state custody to the federal court for that hearing. Dkt. No. 2. The defendant asked to be returned to the Milwaukee County Jail after the hearing. Dkt. No. 4. Judge Joseph issued a federal detainer, so that if the defendant were released from state custody, he would be remitted to federal custody until a federal judge could determine whether he should be detained or released. Dkt. No. 5.

On June 25, 2019, the state court dismissed the state charges on the assistant district attorney's motion to dismiss, given the pending federal charge. Id., State v. Johnson, 2017CF003013 (Milwaukee County Circuit Court), available at https://wcca.wicourts.gov.

On July 17, 2019, the defendant filed a motion asking the federal court to release him with conditions. Dkt. No. 19. The motion indicated that the defendant had an extensive employment history, including work as a paint technician and "roughly four years" as a welder at Super Steel. Id. at 2. It stated that the defendant's last criminal conviction had been a misdemeanor criminal damage to property charge, for which he'd received a sentence of probation (which he'd completed successfully). Id. The defendant proposed that if released, he could live with his sister Fawanda Johnson and her fifteen-year-old son at 7881 N. 60th Street in Milwaukee. Id. The defendant expressed confidence that he could obtain work quickly, given his training and job experience. Id. The motion opined that while the defendant had no formal mental health diagnosis, he had "uncharacteristically" stopped attending his state court hearings and stopped communicating with his state probation officer. Id. at 3. The motion indicated that when defense counsel had asked why the defendant had stopped going to state court when this case was pending there, the defendant "described feelings and thoughts that seemed to reflect symptoms of depression." Id. Defense counsel recommended that the court order the defendant to undergo a mental health assessment and follow any treatment recommendations. Id.

The next day—July 18, 2019—the parties filed an executed plea agreement, in which the defendant agreed to plead guilty to one count of being a felon in possession of a firearm. Dkt. No. 20. Among other things, the plea agreement provides that at sentencing, the defendant will recommend a

4

sentence of no less than thirty months, while the government will recommend a sentence of no greater than seventy-eight months—a four-year difference. Id. at 7. The same day, this court scheduled a sentencing hearing for July 29, 2019 at 2:30 p.m. The following day—July 19, 2019—Judge Joseph calendared a hearing on the defendant's motion for bond, setting it for July 23, 2019 at 10:00 a.m.

Consequently, the defendant appeared before Judge Joseph for a bond hearing six days before he was scheduled to appear before this court to enter a guilty plea on a charge for which he had agreed that he would ask for a sentence of no less than thirty months in federal prison.

Judge Joseph and the parties had available to them a prior record memo prepared by the pretrial services department. Dkt. No. 3. The document showed that the defendant had a criminal history dating back to 1996, when he was fifteen. Id. at 2-3. While the history reflected nine prior convictions, none appeared to involve violent behavior (although a 2015 conviction for criminal damage to property and disorderly conduct included the words "domestic abuse"). The defendant has convictions for possession of small amounts of marijuana and cocaine in his teens and a conviction for carrying a loaded gun in a car and possessing drug paraphernalia and drugs when he was twenty (for which he received a sentence of sixty days in jail). He accumulated convictions for bail jumping and failing to appear when he was twenty and twenty-one, one of which led to a sentence of two years in custody and two years' extended supervision. Id. Between 2003 and 2009, it appears that the

defendant stayed out of trouble; between 2009 and the events of June 30, 2017 he accrued minor convictions for disorderly conduct, possession of marijuana/resisting (for which he received a sentence of nine months in jail), operating under the influence, and criminal damage to property/disorderly conduct. Id. In two of these four latter cases, he received probationary sentences. In four of the nine convictions, the defendant received some sort of supervision—either an extended supervision component of a prison sentence or a probation sentence. In three out of four of those cases, the supervision was revoked—once when he was in his early twenties (for two different cases) and once in his late twenties. Id.

The parties and Judge Joseph also had available to them a pretrial services report. Dkt. No. 8. The report showed that the defendant is thirty-eight years old and has lived in Milwaukee pretty much his whole life. Id. at 1. His mother and sister both live in Milwaukee, and he has good relationships with both. He is single, but has two children from a prior relationship who live with their mother in a nearby town. Id. at 1. The report indicates that the defendant has been unemployed since February 2016—over a year before the events of June 30, 2017—and that he'd been supporting himself with savings (which had run out) and with the help of friends and family. He had worked as a welder for some two years before being laid off in 2016, and he has degrees in welding and HVAC. Id. The report indicated that the defendant's sister believed he'd been depressed lately, and that the defendant himself reported a history of gambling. Id. While the defendant had a history of drinking and marijuana use,

it appeared that he'd stopped both as of the time of the report. Id. at 2. The pretrial services department recommended that Judge Joseph release the defendant but require him to be on home detention with restricted travel and other conditions. Id. at 5.

The court listened to the recording of the July 23, 2019 hearing before Judge Joseph, which is where it obtained some of the facts about what the parties argued and how Judge Joseph ruled. At the hearing, the government asked the court to deny the defendant's motion for bond. Dkt. No. 21 at 1. The prosecutor argued that the defendant had a significant criminal record, but more to the point, that he had absconded from supervision when the case had been pending in state court. He argued that the defendant had demonstrated that he was not likely to follow the rules of supervision. Id. He also pointed out that the parties had filed a plea agreement which exposed the defendant to at least thirty months in federal prison. The prosecutor noted that if the defendant's bond hearing had taken place just one week later, before the district court, the defendant would have been required to prove by clear and convincing evidence that he did not pose a flight risk or a danger to the community.

Defense counsel emphasized several of the points he'd raised in the motion for bond. He acknowledged that the defendant had been missing from state supervision for a long time, and told Judge Joseph that during that time, the defendant had been living with a friend and doing odd jobs. (This is also what the defendant told the pretrial services officer.) Counsel explained that in

7

April 2019, the defendant had been involved in a car accident. Counsel opined that the defendant knew, when the accident occurred, that there was a warrant out for his arrest, and that he could have fled the scene of the accident to avoid being arrested. Counsel argued, however, that the defendant opted to stay at the scene and "face the music." Counsel opined that the government was seeking detention because it believed the defendant posed a risk of flight, not because he posed a danger to the community, and argued that conditions such as location monitoring would ameliorate that flight risk.

Judge Joseph, noting that she'd been trying to open the plea agreement on her computer during the hearing (apparently unsuccessfully), asked defense counsel to recount the facts of the offense to which the defendant was pleading guilty; defense counsel did so, and the government confirmed that with the exception of a disagreement about how quickly the defendant had moved away from the officers and toward the North 20th Street residence on June 30, 2017, the recitation was accurate.

Judge Joseph also asked defense counsel to comment on the fact that the defendant had signed the plea agreement and would be appearing before this court in only a week's time to admit that he'd committed the crime for which he was indicted. Defense counsel noted several things. First, he pointed out that if Judge Joseph granted the defendant's motion and released him on the proposed conditions, the fact that the defendant was to appear before a district court judge only a week later would provide a mechanism for swift review. Second, counsel told the court that over the past few months, the

defendant had been coming to terms with taking responsibility for the offense and facing a not-insignificant sentence. Counsel argued that the defendant had a different mind-set than he'd had when he was before the state court two years ago. Counsel explained that even if Judge Joseph released the defendant and this court ordered him detained only a few days later, the defendant would have had an opportunity to be out and try to prove himself. He told the court that the defendant hoped that he could spend some time with his family and put away some money in the time between release and any sentencing date.

Judge Joseph expressed concern about the fact that the defendant had absconded in state court. Nonetheless, she accepted the recommendation from pretrial services and defense counsel and ordered the defendant released on the conditions proposed by pretrial services (including location monitoring). She told the defendant that the fact that he had pled guilty provided him an incentive to comply with the conditions of bond, warning him that if he violated his bond, he stood to lose the benefits of the plea agreement and to face new charges for failing to appear. She told the defendant that she was "giving [him] rope"—presumably meaning that in ordering him released, she was granting his request, but also giving him the opportunity to get himself in deeper trouble if he made the wrong choices.

The government asked Judge Joseph to stay her order releasing the defendant until the end of the day, to give the government the chance to seek review with this court. Judge Joseph agreed, clarifying that the stay was to give the government the opportunity to file a motion for review of her order. She

noted that once the government filed that motion, the motion itself would stay the defendant's release until this court decided it.

That afternoon, the government filed this motion for review of Judge Joseph's decision. Dkt. No. 24. The motion emphasized the defendant's criminal history and the fact that he had admitted to a serious offense—being a felon in possession of a firearm. Id. at 4-5. But the prosecutor focused on the defendant's absconding in state court. He argued that this was not a situation in which the defendant had a momentary panic attack and disappeared for a couple of days; "[the defendant] ignored the criminal proceedings for *more than a year.*" Id. at 5. (Emphasis in original.) The government asserted that had it not been for the car accident defense counsel described, it appeared unlikely that the defendant would ever have voluntarily turned himself in. Id. The government disagreed that location monitoring would ensure the defendant's appearance in court. Id. It pointed out that he faces significant time in prison on the federal charges—a statutory maximum of ten years in prison (which the government concedes he's unlikely to receive) and likely at least thirty months in custody. Id. at 6. Finally, as to Judge Joseph's view that the defendant had incentive to appear because of how much he could lose if he violated his bond, the government argued that having a lot to lose had not ensured the defendant's appearance in the past. Id. The government concluded that a preponderance of the evidence showed that the defendant presents a risk of flight. Id.

Defense counsel responded that "this matter would typically be a clear-cut case for bond, with minimal conditions," were it not for the fact that the defendant had absconded in 2017. Dkt. No. 26. He reminded the court, however, that the question the court needed to answer was whether there was a condition, or any combination of conditions, that would assure the defendant's appearance. Id. at 1. Counsel characterized the defendant's criminal history as having "peaked in his youth." Id. at 2. He explained that the defendant's most recent conviction—the 2015 criminal damage to property/disorderly conduct/domestic abuse—had resulted from the defendant breaking into his own home to retrieve his property after his girlfriend had changed the locks as a result of a breakup. Id. at 3. (Counsel gave Judge Joseph that same explanation at the July 23 bond hearing.) The defendant argued that on the night of June 30, 2017, the defendant had not fired the gun, and counsel stated that "an officer later remarked [to the defendant] that the reported gunshots may have been fireworks"). Id. Counsel repeated his explanation of the April 2019 car accident, and the fact that the defendant had decided to stick around and face the music. Id. at 4. He emphasized that during the time the defendant had been missing, he did not appear to have had contact with the police. Id. Counsel repeated that the defendant's explanation of why he'd not shown up in state court sounded to counsel a lot like the symptoms of depression. Id. Finally, counsel stated that in the plea agreement, the government had "provided substantial consideration, agreeing to ask for a

sentence well under what the parties anticipate the advisory guideline range will be." Id. at 6.

On July 17, the defendant asked for "release . . . pending trial" under 18 U.S.C. §3142. He had not then, and has not yet, been convicted of a federal crime. Under §3142(b), a court "shall" order a defendant released "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required . . . ." If the court makes that determination, it still must order the defendant's release "subject to the least restrictive further condition, or combination of conditions, that [the court] determines will reasonably assure the appearance of the person as required . . . ." 18 U.S.C. §3142(c)(1)(B). In deciding whether there are conditions of release that will ensure the defendant's appearance, the statute requires the court to consider

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

12

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. §3142(g). If the court finds that there is "no condition or combination of conditions" that "will reasonably assure the appearance of the person as required," the court "shall" order the defendant detained. 18 U.S.C. §3142(e). The government "bears the burden of proving that no set of conditions will reasonably assure [the defendant's] appearance at the required times." United States v. Portes, 786 F.2d 758, 765 (7th Cir. 1985).

If, rather than Judge Joseph taking up the defendant's motion on July 23, *this* court had taken up the motion after the plea hearing on July 29, the governing statute would have been 18 U.S.C. §3143, which governs release or detention pending sentencing. Section 3143(a) requires a court to detain a defendant who has pled guilty to a crime, "unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee . . . if released . . . ." 18 U.S.C. §3143(a)(1). "The reason for not imprisoning a convicted defendant (unless he is likely to flee or is a public menace) before he is sentenced is that the sentence may not be a sentence of imprisonment, or may be a sentence for a shorter period of imprisonment than the interval between conviction and sentencing; or that the defendant needs some time to get his affairs in order." United States v. Holzer, 848 F.2d 822, 824 (7th Cir. 1988) (citing S. Rep. No. 225, 98th Cong., 2d Sess. 26 (1984), U.S. Code Cong. & Admin. News 1984, p. 3182). Under §3143(a), the defendant bears the burden of proving by clear and convincing evidence that he does not present a risk of

13

flight. See, *e.g.*, United States v. Hanhardt, 173 F. Supp. 2d 801, 804 (N.D. Ill. 2001).

Reviewing the motion under §3142(b), this court determines that release would not reasonably assure the defendant's appearance for his change-of-plea hearing and/or sentencing. The defendant failed to appear for a hearing in August 2001, when he was nineteen; he was in Oklahoma at the time and picked up a new conviction while there. Dkt. No. 8 at 3. This resulted in a felony bail-jumping conviction in Milwaukee in 2003. Id. In 2017, at the time of his arrest for this offense, the defendant had not been employed for over a year. He was on supervision in state court for only two months after that arrest when he failed to appear for a bond hearing. He forfeited $2,500 in cash bail, which he was able to post despite not being employed. His appearance had to be secured by execution of the warrant that issued when he failed to appear.

The defendant argues that under §3142(c), however, there are conditions that will reasonably assure his appearance—location monitoring, a requirement that he work and a requirement that he submit to a mental health evaluation and, if necessary, treatment. The government disagrees. The next step under §3142 is to consider the §3142(g) factors.

The first factor is the seriousness of the offense charged, "including whether the offense . . . involves . . . a . . . firearm . . . ." 18 U.S.C. §3142(g)(1). The indictment charges the defendant with possessing a gun after being convicted of a felony, and the plea agreement indicates that he has admitted as

14

much. So—the charged offense involves a gun. The defendant implies that it isn't the most serious of gun offenses, because the defendant did not fire the gun. The court agrees. On the other hand, the defendant did not have an unloaded gun under his bed, or in a drawer. He had a loaded gun with an obliterated serial number in his pants pocket. On the spectrum of serious gun offenses, that isn't the most serious offense. But it is more serious than some other cases the court has seen.

The second factor is the weight of the evidence against the defendant. That weight is heavy. The defendant has signed a plea agreement, admitting that he had the loaded gun, and that he had previously been convicted of a felony.

The third factor is the defendant's personal history/characteristics. Some of the statutory factors weigh in the defendant's favor—he seems in good physical condition, has lived in the community most of his life, has family ties in the community (his sister and his mother, with whom he is close) and, according to him, no longer has drug or alcohol problems. He also has skills (welding, HVAC) and at least one verifiable job. Other factors are less favorable. It appears the defendant was laid off from Super Steel in February 2016, and that he was unemployed when he was arrested on June 30, 2017. So although he had work skills, and had a work history, it doesn't appear that he'd been using those skills for over a year when he was arrested. Between the time he was released to Justice Point supervision and the time of his arrest in April 2019, the defendant says that he was doing landscaping work; the court has

no verification of that. He does not have a history of violence, according to his criminal record, and the crimes for which he was convicted aren't particularly serious. Even so, he failed to appear for a case (and went out of state) when he was nineteen or twenty, violated his extended supervision when he was twenty or so, violated his probation when he was twenty-eight or twenty-nine and absconded in this case just two years ago. It appears that the defendant committed multiple violations while he was on Justice Point supervision—the judge admonished him for one violation and scheduled a bond hearing when Justice Point reported that it had discharged him for others. The defendant chose not to attend that bond hearing and was "missing in action" for the next eighteen months. Defense counsel described the defendant's choice not to attend the bond hearing and not to communicate with Justice Point as "uncharacteristic," but there appears to have been precedent. And the defendant was under Justice Point supervision for only a month or so; he ran into trouble pretty quickly.

If the court considers the motion under §3143—which the court thinks is reasonable given that the defendant has admitted in the plea agreement that he committed the offense with which he was charged—the court cannot conclude that the defendant has presented clear and convincing evidence that he does not present a flight risk. When the defendant absconded from Justice Point supervision, he had not admitted the crime. He'd only just been given a trial date. Today, the defendant has admitted the offense, and has signed an agreement promising that he will ask the court to impose a sentence of no less

16

than thirty months in federal prison. It appears that the defendant chose not to appear at his state bond hearing because he was afraid he might be locked up; it is now certain that the defendant will be locked up for some amount of time on the federal charge. The defendant has argued that he wants to be released so that he can spend time with his family and work to earn some money before sentencing. But he had some eighteen months with his family between the missed bond hearing and his arrest in April, and as the court has indicated, it doesn't appear that he used that time to obtain the kind of work he argues he is qualified to do. Defense counsel has suggested that the defendant made a choice to "face the music" when he found himself in a car accident. The court agrees that staying at the scene of the accident was a more appropriate choice than fleeing that scene. But it wasn't a choice to self-surrender, and as the government notes, there is no way to know if the defendant ever would have returned to face the charges if he hadn't been in the accident.

The defendant has proposed to live with his sister (who clearly cares about him, because she has agreed to the arrangement) and to submit to location monitoring; he argues that these conditions will ameliorate the risk that the defendant will not appear for court. If the defendant was on radio frequency monitoring, the system would alert pretrial services if the defendant was not near the base unit when he was supposed to be at home. But he also has proposed that he will work while he is released. Normally the court encourages defendants to work while on release, but being away from home to look for work or to go to a job seems likely to present a temptation to a

17

defendant who made a bad choice when he faced possible incarceration two years ago, and for whom the likelihood of incarceration is much higher now.

Considering all of the circumstances—the defendant's history of supervision violations, his lack of employment at the time of his arrest in 2017, his carrying a loaded gun with an obliterated serial number in his pocket, his failure to appear in state court when he was facing possible bond revocation, his forfeiture of $2,500 in cash bail, his eighteen-month status as an absconder, his admission to the charged offense and his agreement to recommend a sentence of no less than thirty months—the court finds that there is no combination of conditions that will reasonably assure the defendant's appearance at his plea and/or sentencing hearing.

The court **GRANTS** the government's motion for review of the pretrial release of the defendant. Dkt. No. 24.

The court **VACATES** the order setting conditions of release. Dkt. No. 21.

The court **ORDERS** that the defendant shall be detained pending his plea and sentencing.

Dated in Milwaukee, Wisconsin this 26th day of July, 2019.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**